United States Court of Appeals, Eleventh Circuit.

No. 94-5240.

UNITED STATES of America, Plaintiff-Appellee,

v.

Paul MORRIS, Defendant-Appellant.

April 23, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-6133-CR-KLR), Kenneth L. Ryskamp, Judge.

Before HATCHETT and BARKETT, Circuit Judges, and OAKES[*], Senior Circuit Judge.

OAKES, Senior Circuit Judge:

This appeal is from a judgment of conviction entered on October 24, 1994 by the United States District Court for the Southern District of Florida, Kenneth L. Ryskamp, *Judge,* against the appellant Paul Morris ("Morris") for violation of 18 U.S.C. § 1029(a)(4) (1988). On appeal, Morris argues that § 1029(a)(4) does not criminalize the possession and sale of altered cellular phones that access cellular services without charge. He also contests the sentence he received as improperly calculated under the Federal Sentencing Guidelines. We agree with Morris that § 1029, as it read at the time of Morris's conviction, cannot be extended to reach the conduct for which he was convicted. Accordingly, we reverse.

BACKGROUND

Morris was indicted in July 1993 under the Credit Card Fraud Act, 18 U.S.C. § 1029(a)(4) (1988), for selling a cellular phone to

---

[*]Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

an undercover Secret Service agent.  The phone had been altered so that its electronic serial number ("ESN") could be reprogrammed from the phone's keypad.

An ESN is an eight-digit number that is programmed onto a microchip in an individual phone and is designed to identify permanently the instrument just as a vehicle identification number identifies an automobile.  A cellular phone connects a call by transmitting its ESN, its mobile identification number ("MIN") (a ten-digit number identifying the subscriber), and the number being called to a nearby cell, which in turn transmits it through local or long distance telephone lines.  If the call is local, the local carrier confirms that the ESN/MIN combination corresponds to a subscriber's account.

In order to accommodate long distance calls, local carriers have "roamer" agreements with other carriers that permit customers to place calls from outside their local service area.  The local carrier for the geographic area where the call originates relays the phone's ESN/MIN combination to a computer clearing house which subsequently verifies that the combination matches a valid account.  If an ESN/MIN combination is not matched with an account, no further service is allowed.  Because the clearing houses cannot instantly verify an ESN/MIN combination, however, there exists a window of time in which calls can be made from the phone even if the combination is invalid.

A cellular phone can be used to circumvent normal billing procedures by "tumbling," or changing the ESN/MIN combination to take advantage of this free-call window.  A "tumbling" cellular

phone is one in which the phone's original ESN microchip has been replaced with one that allows the phone's ESN to be changed from the keypad. Calls made from such phones are untraceable because the ESN is not connected to any subscriber's account. The caller can use a fictitious ESN until the clearing house recognizes the ESN/MIN combination as invalid, and then repeat the process by "re-tumbling" the ESN and MIN to create a new combination.

The government indicted Morris in July 1993 for one count of violating 18 U.S.C. § 1029(a)(4)[1] by selling a tumbling cellular phone complete with instructions for reprogramming the phone's ESN. Following a three-day trial at which Morris introduced no evidence, a jury found him guilty. The court sentenced Morris to 14 months imprisonment in October 1994.

## DISCUSSION

In this appeal, Morris seeks reversal of the jury verdict on the ground that § 1029 did not criminalize the use of tumbling cellular phones at the time of his indictment. Morris also contends that the district court misapplied the Federal Sentencing Guidelines in determining his sentence. We agree with Morris that § 1029(a)(4) does not apply in his case and therefore do not address his sentencing arguments. We review the district court's analysis of § 1029's applicability *de novo.* *James v. United*

---

[1]The indictment charged Morris with a "violation of Title 18, United States Code, Section 1029(a)(4) and 2." The parties disagree on the meaning of "and 2." We note, however, that the jury was charged only on the elements of § 1029(a)(4) and the judgment entered by the district court reflects that Morris was found guilty only of a single violation of § 1029(a)(4). We therefore do not need to resolve any ambiguity in the language of the indictment.

*States,* 19 F.3d 1, 2 (11th Cir.1994) (per curiam); *United States v. Hooshmand,* 931 F.2d 725, 737 (11th Cir.1991).

In 1993, § 1029 read in pertinent part:

(a) Whoever—

> (4) knowingly, and with intent to defraud, produces, traffics in, has control or custody of, or possesses device-making equipment;

shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

> \*     \*     \*     \*     \*     \*

(e) As used in this section—

> (6) the term "device-making equipment" means any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device.

"Access device" is also defined by the statute:

> (e)(1) the term "access device" means any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

In 1994, Congress amended the statute to address specifically tumbling cellular phones such as the one at issue here. *See* 18 U.S.C. § 1029(a)(5) (1994) (criminalizing use, production, sale, or custody of "a telecommunications instrument that has been modified or altered to obtain unauthorized use of telecommunications services."); *see also* H.R.Rep. No. 827, 103d Cong., 2d Sess. 31 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3489, 3511 ("[t]his section amends the counterfeit access device law to criminalize the use of cellular phones that are altered ... to allow free riding on the cellular phone system.").

Morris argues that tumbling cellular phones cannot be

considered "device-making equipment" within the definition of 18 U.S.C. § 1029(e)(6) and that therefore his indictment under § 1029(a)(4) cannot stand. He contends (1) that the phone did not create an "access device" as defined under the statute because the ESN/MIN combinations generated by the phone did not access identifiable accounts, and (2) that the phone is "designed and primarily used" to make calls rather than to make access devices as required by the statute.

We agree with Morris's second argument. The plain language of the statute necessitates that the equipment at issue be "*designed or primarily used* for making an access device." § 1029(e)(6) (emphasis added). Here, Morris's phone was not primarily used to generate ESN/MIN combinations: it was used to make phone calls. Only when one combination was declared invalid, presumably after the phone had been used to place as many calls as possible in the window of time available, did the tumbling phone generate a new ESN/MIN combination. It is equally clear that the cellular phone was not designed to generate invalid ESN/MIN combinations, but rather to permit mobile telephone calls.

Most prosecutions for device-making equipment under § 1029(a)(4) concern credit card embossers. *See United States v. Lee,* 815 F.2d 971, 973 (4th Cir.1987); *United States v. Mann,* 811 F.2d 495, 496 (9th Cir.1987). Embossers fit clearly into the requirements of the statute because the equipment actually produces the account-accessing device, namely, the counterfeit credit card. Here, it is the microchip in the cellular phone, not the phone itself, which permits the owner to tumble ESN/MIN combinations. It

strikes us, then, that the device-making equipment in a tumbling phone prosecution under § 1029(a)(4) would have to be the equipment used to create the microchip and not, as suggested by the government here, the actual altered cellular phone.

The only two cases which discuss the applicability of § 1029(a)(4) to tumbling cellular phones do not persuade us to reach a result other than the one we are led to by a commonsense reading of the statutory language. In *United States v. Ashe,* 47 F.3d 770, 772 (6th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995), Richard Ashe was charged with a violation of § 1029(a)(4) for trafficking in tumbling cellular phones. Finding that § 1029 did reach Ashe's conduct, the Sixth Circuit concluded that tumbling cellular phones are access "devices that permit and facilitate the theft of "air time,' " *id.* at 774, but did not analyze whether such a phone, in addition to being an access device, can be considered device-making equipment. The court then affirmed Ashe's conviction under § 1029(a)(4) without confronting whether the requirements of that section of the statute had been met.

Similarly, the Ninth Circuit in *United States v. Bailey,* 41 F.3d 413 (9th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 2563, 132 L.Ed.2d 815 (1995), found that microchips which tumbled ESNs were an access device for the purposes of § 1029. Although the defendant in *Bailey* was indicted both for trafficking in access devices in violation of § 1029(a)(1) and for possessing device-making equipment in violation of § 1029(a)(4), the court confined its discussion to the former and did not address

device-making equipment. *Id.* at 417-18. In this respect, its decision, like that of the court in *Ashe,* offers no assistance in applying the language of § 1029(a)(4).

We conclude that Morris's tumbling cellular phone was designed and used primarily to make calls, and cannot reasonably be defined as device-making equipment. We therefore find that the meaning of § 1029(a)(4) cannot be stretched to criminalize the phone's sale.

Moreover, even if the government had chosen to prosecute Morris under another section of § 1029, we are not convinced that the statute as then written can be interpreted to reach the admittedly illegitimate conduct of free riding on a cellular phone system. Other circuits have disagreed on this very issue. *Compare United States v. Brady,* 13 F.3d 334, 340 (10th Cir.1993) (finding that a tumbling cellular phone is not an access device because it does not access an identifiable account) *with Ashe,* 47 F.3d at 774 (disagreeing with *Brady* and finding that the government must only prove theft of services) *and Bailey,* 41 F.3d at 418-19 (disagreeing with *Brady* and finding that contract between local and long distance carriers is an account for the purposes of the statute).

We believe that the *Brady* court's interpretation of § 1029(a)(4) as applicable only to those devices which access an individual account, such as a credit card or a long distance calling card, is the more sound in light of Congress's intent to address fraud in the credit area. *See* H.R.Rep. No. 894, 98th Cong., 2d Sess. 4 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3689, 3690 (citing credit and bank card fraud and abuse as purpose of legislation). As noted by the Tenth Circuit, expanding § 1029

beyond those instances in which an identifiable account is accessed would "turn § 1029 into a general theft statute applicable whenever a company can document a loss through fraud." *Brady,* 13 F.3d at 340.

Of course, in light of Congress's decision to amend § 1029 in 1994 to criminalize specifically conduct such as Morris's, interpretation of the original statute, and our disagreement with the Sixth and Ninth Circuits over this interpretation, is of limited import. While the 1994 amendment arguably provides further support for *Brady*'s narrower reading of § 1029, its primary significance here stems from the fact it will soon render unnecessary inquiries like the one presented by this case.

## CONCLUSION

In accordance with our reasoning above, we REVERSE Morris's conviction under § 1029(a)(4).