**UNITED STATES OF AMERICA,**
**Plaintiff**

v.

**Althea Holden JACKSON (1), James Jackson (2), Lance Williams (3), David Anderson (4), Luis Vasquez (5), Dewayne Clayton (6), Tasha Mathis (7), Mark Edward Kedrowski (8), Mattie Laverne Epperson (9) and Pedro Martinez (10) Defendants.**

No. SA–06–CR–291–OG.

United States District Court,
W.D. Texas,
San Antonio Division.

Dec. 18, 2006.

Alan Brown, San Antonio, TX, Jay S. Norton, Offices Of Alan Brown, San Antonio, TX, for Althea Holden Jackson, James Jackson.

Kurt Gene May, Federal Public Defender, San Antonio, TX, for Tasha Mathis.

Bill Baumann, U.S. Attorney's Office, San Antonio, TX, for U.S.

## ORDER

ORLANDO L. GARCIA, District Judge.

Pending before the Court are Motions to Dismiss the Indictment, filed by Defendants Tasha Mathis (Dkt.# 111), Lance Williams (Dkt.# 113), Luis Vasquez (Dkt.# 120), Mark Edward Kedrowski (Dkt.# 121), David Anderson (Dkt.# 128), Mattie Epperson (Dkt.# 129), DeWayne Clayton (Dkt.# 135) and Pedro Martinez, Jr. (Dkt.# 138). The Government filed an omnibus response (Dkt.# 130), supplemental response (Dkt.# 137) and an affidavit in support of its response (Dkt.# 143). Several replies and supplemental briefs have also been filed by the movants. (Dkt. # 132, 133, 136, 144, 145, 146, 148, 150 and 151). A hearing was held on October 26, 2006 and both sides had an opportunity to present their legal arguments to the Court. (Dkt.# 139).[1] After reviewing the superseding indictment, the parties' briefs, the supporting documents and the applicable law, the Court finds that Defendants' motions should be granted.

In count one of the superseding indictment, Defendants Althea Holden Jackson and James Jackson are charged with aiding and abetting each other in the trafficking and use of unauthorized access devices, in violation of 18 U.S.C. §§ 1029(a)(2) and 2. In count two, Althea and James Jackson, along with the remaining defendants, are charged with conspiracy to use and traffic unauthorized access devices, in violation of 18 U.S.C. §§ 371 and 1029(a)(2).

In describing the alleged conspiracy, the Government alleges that Althea Jackson, an employee in the executive offices of Southwest Airlines, ordered Southwest Airlines Non–Revenue Must Ride (NRMR) tickets from the SW Airlines ticketing department ostensibly for the purpose of thanking SW Airline passengers who assisted flight crews in the performance of their in-flight duties. These tickets should have been mailed to the recipients along with a letter of appreciation. However, Mrs. Jackson kept the tickets and, along with her husband James, began an informal distribution system of selling the tickets for personal gain to friends and co-workers. The eight co-defendants purchased a significant number of tickets, and either gave them to other persons or resold them to other persons for profit, creating yet another distribution network. In describing the overt acts in furtherance of the conspiracy, the Government identifies at least 10 different occasions over an 18 month period in which Althea Jackson acquired over 600 SW Airline NRMR tickets, and all of the tickets were allegedly used, sold or otherwise dis-

---

**1.** The transcript of the hearing was filed on November 3, 2006 (Dkt.# 142).

tributed by the Jackson defendants and/or their co-conspirators.

Defendants contend the indictment should be dismissed because the non-revenue airline tickets are not instruments that can be used to "access" any type of account; therefore, they are not "access devices" within the meaning of 18 U.S.C. 1029(e) and the allegations in the superceding indictment fail to state an offense against the United States. *See* Fed. R.Cim.P. 12(b)(3)(B). The Government claims that the non-revenue airline tickets bear an airline code and a unique ten-digit ticket number, they can be used to obtain services (airline travel), and, after the ticket is used, the airline's records reflect that it has been used. Therefore, the tickets should be considered "access devices." Defendants contend the Government's argument is flawed, and that the "thing of value" (i.e. airline travel) must be obtained *through* some type of account that is *accessed* by the device in question.

The statute under which Defendants have been charged states, *inter alia:*

*§ 1029. Fraud and related activity in connection with access devices*

(a) Whoever—

(2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, *and by such conduct* obtains anything of value aggregating $1,000 or more during that period;

—shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

\* \* \* \* \* \*

(e) As used in this section—

(1) the term "access device" means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, *or other means of account access that can be used,* alone or in conjunction with another access device, *to obtain* money, goods, *services,* or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument);

(3) the term "unauthorized access device" means any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud.

18 U.S.C. § 1029(a)(2), (e)(1) and (3) (emphasis added).[2]

Various federal courts have been presented with the question of whether a particular instrument or code fits the definition of an "access device." While none of the prior cases address the same fact scenario presented herein, the case law does illustrate the type of instruments or codes that have been accepted or rejected as "access devices."

In *United States v. McNutt,* 908 F.2d 561, 563–64 (10th Cir.1990), *cert. denied,* 498 U.S. 1084, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991), the Tenth Circuit determined that cloned satellite TV descramblers can be used to obtain unauthorized satellite services, but they do *not* result in any accounts being debited or charges being accrued.[3] Therefore, the descramblers

---

**2.** The statutory definition of "access device" has remained the same since the law was passed in 1984. *See* Pub.L. 98–473.

**3.** The Court stated that even though operators of satellite TV services suffer economic losses, there are no actual monetary losses resulting

were not considered "access devices." *Id.* Likewise, in *United States v. Brady,* 13 F.3d 334, 339–40 (10th Cir.1993), the Court held that section 1029 does not apply to tumbling cellular telephones, which can be used to obtain cellular phone services, but cannot be used to access any identifiable customer or subscriber account. In so holding, the Tenth Circuit explained:

> [I]n order to fall within § 1029's definition of access device, the government must be able to establish access to a valid identifiable account for which a record of debits and credits is created and maintained, and which results in direct accounting losses. We believe that to hold otherwise would turn § 1029 into a general theft statute applicable whenever a company can document a loss through fraud. Such a broad interpretation of § 1029 is neither supported by the language of the statute nor its legislative history.

*Id.* at 340.[4]

The Ninth Circuit in *United States v. Bailey,* 41 F.3d 413, 417 (9th Cir.1994), *cert. denied,* 515 U.S. 1134, 115 S.Ct. 2563, 132 L.Ed.2d 815 (1995), declined to follow *Brady* and *McNutt* to the extent that a traceable loss of funds from an individual customer or subscriber account is required. The *Bailey* court still understood that an account needed to be accessed in order to meet the statutory definition of "access device." However, it determined that access to an account between local and distant carriers was sufficient because there was an expectation that the local carrier would receive payment for those services upon settlement of the account with the distant carrier. *Id.* at 417. In *United States v. Ashe,* 47 F.3d 770, 774 (6th Cir.1995), the Court agreed with the reasoning in *Bailey,* holding that "invasion of an identifiable customer's account is not a necessary element of proof to support a conviction under the statute here in issue." The Court noted, however, that a home carrier does have an ongoing obligation to reimburse a foreign carrier for calls in its area; therefore, its "account" is debited as a result of the free, unauthorized phone calls even if no particular customer account is debited. *Id.* Similarly, in *United States v. Brewer,* 835 F.2d 550, 553 (5th Cir.1987), the Fifth Circuit determined that a long distance access code, which accesses an account that is billed for the long distance telephone call, fits the statutory definition of an "access device," even though the accounts in *Brewer* were not assigned to specific customers.

The Court has found only one published case that involves airline tickets, and an account was accessed in that case. In *United States v. Abozid,* 257 F.3d 191 (2nd Cir.2001), the travel agency had a credit relationship with the airlines through ARC corporation. When an airline ticket was validated by the agency, the ticket reflected the ARC account number through which the airline could withdraw funds that had been deposited into the account to pay for the ticket. *Id.* at 193–94. In addressing the issue of whether the validated airline tickets in *Abozid* could be access devices, the Court noted: "the government conceded at oral argument, and our case law holds, that some account must

---

from discrete transactions reflected in any account. *McNutt,* 908 F.2d at 563–64.

**4.** The Eleventh Circuit in *United States v. Morris,* 81 F.3d 131, 133 (11th Cir.1996), interpreting the term "device-making equipment," followed the reasoning in *Brady,* stating: "[w]e believe that the *Brady* court's interpretation of § 1029(a)(4) as applicable only to those devices which access an individual account, such as a credit card or a long distance calling card, is the more sound in light of Congress's intent to address fraud in the credit area." 81 F.3d at 134.

actually be accessed in the commission of a fraud chargeable under Section 1029." *Abozid*, 257 F.3d at 191, n. 4. The Court went on to find that the credit relationship between the agency and the airline satisfied the "account access" requirement in Section 1029 and held that, under those circumstances, "such [airline] tickets are access devices within the meaning of Subsection 1029(e)(1) because they bear an account number that, when imprinted upon the ticket stock, along with the airline identification code and travel itinerary, accesses services of value *provided under a credit relationship between the travel agency and the airlines." Id.* at 195 (emphasis added).

In facts in this case also involve airline travel, but the similarity ends there. It is undisputed that the NRMR tickets are, by their very nature, *non-revenue.* They are free passes or free flight coupons, distributed by the airline in *paper* form.[5] They are purely complimentary, akin to a free meal coupon given by a restaurant to a customer. Southwest Airlines does not expect payment for the pass when it is issued. Nor is there any expectation of payment in the future. As a result, there is no credit to extend or account to access in order to obtain the airline services.

At the hearing on this matter, the Government argued that the NRMR tickets give the holder access to a flight, which is a thing of value, and that should be enough to satisfy the statutory definition. However, this interpretation simply disregards the statutory language and the intent of the Act. The underlying concern, in passing the legislation, was the unauthorized use of account numbers or access codes *to gain access to bank or credit accounts.* H.R. Rep. 98–894, 98th Cong., 2d Sess. 4 (1984), reprinted in 1984 U.S.C.C.A.N. 3689; *United States v. Hughey*, 147 F.3d 423, 434 (5th Cir.), *cert. denied,* 525 U.S. 1030, 119 S.Ct. 569, 142 L.Ed.2d 474 (1998)("Congress drafted the statute broadly to include any fraud arising from unauthorized use or counterfeiting of credit cards, debit cards, account numbers, *or other devices capable of affording account access,* such as by electronic transfer")(emphasis added). It is through access to accounts that things of value can be obtained and losses to the victim occur. Thus, while obtaining a thing of value is part of the offense, the thing of value must be obtained by accessing an account with an "access device."

After the hearing, the Government attempted to cure the blatant deficiencies in its argument by securing the affidavit of a SW Airlines representative. In the affidavit, the airline representative describes a ledger system that the airline uses to track the passes that are issued and later redeemed. (Dkt.# 143). However, the ledger is simply an internal tracking process and there is nothing in the affidavit to reflect that an account must be accessed in order to obtain the free airline services, or that any credit relationship exists between the airline and the recipient of the pass. (Dkt.# 143). In fact, the affiant confirms that the NRMR flight passes are complimentary and the passes are not sold or purchased. (Dkt.# 143).

To find that NRMR airline tickets are "access devices" would require the Court to ignore the facts, ignore the law, or both. The allegations in the superceding indictment fail to state an offense against the United States, and the Defendants' motions must be granted.

It is therefore ORDERED that the Motions to Dismiss the Indictment, filed by Defendants Tasha Mathis (Dkt.# 111),

---

**5.** The Government provided a sample copy of a flight coupon to the Court at the hearing. The sample copy is attached hereto and incorporated herein as Exhibit A.

Lance Williams (Dkt.# 113), Luis Vasquez (Dkt.# 120), Mark Edward Kedrowski (Dkt.# 121), David Anderson (Dkt.# 128), Mattie Epperson (Dkt.# 129), DeWayne Clayton (Dkt.# 135) and Pedro Martinez, Jr. (Dkt.# 138) are GRANTED.

Exhibit A

**Exhibit A**

# SOUTHWEST AIRLINES NONREVENUE MUST RIDE PASS – NOTICE OF INCORPORATED TERMS