FILED
United States Court of Appeals
Tenth Circuit

March 3, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JASON ALAN TATUM,

Defendant–Appellant.

No. 07-7053

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 07–CR–12–01–RAW)**

---

Submitted on the briefs:[*]

Terry L. Weber, Tulsa, Oklahoma, for Defendant–Appellant.

Sheldon J. Sperling, United States Attorney, and Ryan M. Roberts, Assistant United States Attorney, Muskogee, Oklahoma, for Plaintiff–Appellee.

---

Before **BRISCOE**, **McKAY**, and **McCONNELL**, Circuit Judges.

---

**McKAY**, Circuit Judge.

Defendant pled guilty to one count of uttering a counterfeit check with the

---

[*] After examining the briefs and the appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f). The case is therefore ordered submitted without oral argument.

intent to deceive an organization in violation of 18 U.S.C. § 513(a). The pre-sentencing report calculated Defendant's total offense level at ten, based on a base offense level of six under United States Sentencing Guideline Manual (U.S.S.G.) § 2B1.1(a)(2), a six-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(10),[1] and a two-level reduction pursuant to U.S.S.G. § 3E1.1(a). Based on a criminal history category of VI, Defendant's advisory sentencing range was calculated at twenty-four to thirty months. In response to the PSR and at his sentencing hearing, Defendant objected to the § 2B1.1(b)(10) enhancement. The district court overruled his objection, holding that subsections A and B of § 2B1.1(b)(10) were both satisfied by Defendant's creation of counterfeit checks and a false driver's license by means of a computer and scanner.[2] The court then sentenced Defendant to a term of twenty-four months' imprisonment, at the bottom of the advisory Guidelines range. On appeal, Defendant challenges the application of the six-level enhancement under § 2B1.1(b)(10).

In reviewing the district court's sentencing decision, we "must first ensure that the district court committed no significant procedural error, such as failing to

---

[1] Section 2B1.1(b)(10) generally calls for a two-level increase in the offense level, but it provides that the offense level should be increased to twelve if it would otherwise be less than twelve. Thus, Defendant's calculated offense level was increased six levels to level twelve pursuant to this Guideline.

[2] The enhancement under § 2B1.1(b)(10) applies if any of the three subsections are satisfied. The court held that subsection B provided an alternative ground for imposition of the § 2B1.1(b)(10) enhancement.

calculate (or improperly calculating) the Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). "Assuming that the district court's sentencing decision is procedurally sound, [we] should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* Defendant contends that the district court committed a significant procedural error when it imposed a six-level enhancement pursuant to § 2B1.1(b)(10), increasing the advisory Guidelines range for Defendant's sentence from a range of six to twelve months to a range of twenty-four to thirty months.

Subsection A of § 2B1.1(b)(10) applies to an offense involving "the possession or use of any (i) device-making equipment, or (ii) authentication feature."[3] Device-making equipment is defined as "any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device." 18 U.S.C. § 1029(e)(6); *see also* U.S.S.G. § 2B1.1 cmt n.9(A) ("'Device-making equipment' (i) has the meaning given that term in

---

[3] An authentication feature is "any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified." 18 U.S.C. § 1028(d)(1); *see also* U.S.S.G. § 2B1.1 cmt n.9(A) ("'Authentication feature' has the meaning given that term in 18 U.S.C. § 1028(d)(1)."). The government does not argue that Defendant's offense involved the use, possession, production, or trafficking of any authentication feature.

18 U.S.C. § 1029(e)(6) . . . .").[4] Subsection B applies to an offense involving "the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature." U.S.S.G. § 2B1.1(10)(B). For purposes of both the statutory definition of device-making equipment and the text of § 2B1.1(b)(10)(B), an access device is defined as "any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)." 18 U.S.C. § 1029(e)(1).

At his sentencing hearing, Defendant argued that his conduct did not involve the production or trafficking of any access device. The district court overruled this objection, concluding that the account numbers printed on the counterfeit checks were access devices for purposes of subsections A and B of § 2B1.1(b)(10). The court also indicated that the counterfeit checks themselves might be considered access devices. We disagree on both counts.

Although the statute defining access devices is quite broad, it contains a

---

[4] Device-making equipment also "(ii) includes (I) any hardware or software that has been configured as described in 18 U.S.C. § 1029(a)(9); and (II) a scanning receiver referred to in 18 U.S.C. § 1029(a)(8)." Neither of these definitions is applicable to Defendant's conduct in the instant case.

key limitation. An access device is defined as one of a number of means of account access that can be used "to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds *(other than a transfer originated solely by paper instrument)*." 18 U.S.C. § 1029(e)(1) (emphasis added). "That parenthetical exclusion unambiguously places the passing of bad checks and similar conduct outside the scope of the federal statute." *United States v. Hughey*, 147 F.3d 423, 434 (5th Cir. 1998). Indeed, the legislative history of § 1029 reveals that "Congress was focused on the fraudulent use of [access] devices in connection with credit transactions," *United States v. McNutt*, 908 F.2d 561, 563 (10th Cir. 1990) (internal quotation marks omitted), and specifically intended to exclude conduct such as passing bad checks. *See* S. Rep. No. 98-368, at 10 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3647, 3656 ("By specifically excluding transfers of funds originated solely by paper instrument, [the statutory definition] covers offenses such as those included in the Electronic Fund Transfer Act, but does not cover activities such as passing bad checks."); H.R. Rep. No. 98-894, at 19 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3689, 3705 ("The definition of this term is broad enough to encompass future technological changes and the only limitation i.e., '(other than a transfer originated solely by paper instrument)' excludes activities such as passing forged checks.").

In *Hughey*, the Fifth Circuit considered whether a defendant's creation and

presentation of a number of counterfeit checks constituted the production, use, or trafficking of unauthorized or counterfeit access devices. 147 F.3d at 434-36. After considering the plain language and legislative history of the access device definition, the court concluded that the defendant's conduct did not involve access devices because his conduct involved only transfers "originated solely by paper instrument" and "[s]uch conduct is not within the ambit of the conduct that Congress sought to prohibit in § 1029." *Id.* at 435. As in this case, the government in *Hughey* argued that the account numbers printed on the counterfeit checks themselves constituted access devices because they could potentially be used with other codes, such as wire transfer codes, to obtain access to the accounts. The court rejected this argument, stating:

> The government's argument ignores the fact that there is absolutely no suggestion in the record that Hughey either possessed or had access to the additional codes that would have been required to complete a wire transfer with the account numbers. More importantly, the government's interpretation also ignores the plain text of the parenthetical exclusion, which is directly application to Hughey's conduct. The statute excludes "transfer[s] originated solely by paper instrument," without regard to whether the transfer involved some component of an access device or some device which, but for the parenthetical exclusion, might otherwise have the potential [sic] be an access device.

*Id.*

We agree with the Fifth Circuit's reasoning. The statutory definition of access devices unambiguously excludes "transfer[s] originated solely by paper instrument," which is precisely the conduct involved in Defendant's offense. The

government introduced no evidence that Defendant used, possessed, produced, or trafficked in bank account numbers in any way except as part of his scheme to pass counterfeit checks. We therefore conclude that both the counterfeit checks and the account numbers printed on those checks fall outside the statutory definition of an access device. Thus, we hold that Defendant's conduct did not involve the use or possession of device-making equipment—equipment designed or primarily used for making access devices or counterfeit access devices[5]—under subsection A of § 2B1.1(b)(10), nor did it involve trafficking in or producing

---

[5] At sentencing, Defendant also argued that the computer and scanner he used to create the counterfeit checks did not constitute device-making equipment because computers and scanners are not primarily used to commit crimes. The district court rejected this argument, stating that Defendant was defining device-making equipment too narrowly and concluding that § 2B1.1(b)(10)(A) was satisfied by Defendant's use of a computer and scanner to counterfeit checks. Defendant also appeals this portion of the court's ruling.

We note that the two circuits to address this issue have both adopted a middle ground in construing the definition of device-making equipment. *See United States v. Cabrera*, 208 F.3d 309 (1st Cir. 2000); *United States v. Morris*, 81 F.3d 131 (11th Cir. 1996). While rejecting the general-purposes argument that Defendant proposed to the district court in this case, the First and Eleventh Circuits have indicated that a district court must enquire whether the defendant designed or primarily used the equipment at issue to make access devices. *See Cabrera*, 208 F.3d at 312-15 (considering whether evidence supported conclusion that defendant primarily used or designed his computer system for document production); *Morris*, 81 F.3d at 133 ("Here, [the defendant's tumbling cellular] phone was not primarily used to generate [electronic serial number/mobile identification number] combinations: it was used to make phone calls."). Given our conclusion that Defendant's conduct fell outside the statutory definition because it did not involve access devices at all, we need not resolve this issue here.

access devices under subsection B.  We accordingly hold that the district court erred in imposing a six-level enhancement pursuant to § 2B1.1(b)(10).

The district court's imposition of the § 2B1.1(b)(10) enhancement constituted a significant procedural error.  We therefore **REVERSE** the imposition of this enhancement and **REMAND** for resentencing in accordance with this opinion.