**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4080**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PENNY S. DAVIS,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, District Judge.  (1:17-cr-00069-CCE-1)

Submitted:  September 28, 2018                    Decided:  October 18, 2018

Before KEENAN and HARRIS, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Stacey D. Rubain, QUANDER & RUBAIN, PA, Winston-Salem, North Carolina, for Appellant.  Matthew G.T. Martin, United States Attorney, Frank J. Chut, Jr., Assistant United States Attorney, K.P. Kennedy Gates, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Penny S. Davis appeals from her 41-month sentence imposed pursuant to her guilty plea to mail fraud.[1]  On appeal, she challenges the district court's determination that her Sentencing Guidelines range should be enhanced based upon her use of sophisticated means and the exploitation of a vulnerable victim.  She also asserts that the district court failed to properly consider her arguments for a lower sentence and failed to provide proper reasoning for the imposed within-Guidelines sentence.  We affirm.

I.

Davis first challenges her enhancement for use of sophisticated means.  Because she objected in the district court, we review this issue for clear error.  A clear error occurs when the reviewing court is "left with a firm and definite conviction that a mistake has been committed."  *United States v. Adepoju*, 756 F.3d 250, 258 (4th Cir. 2014) (citation omitted).  "[U.S. Sentencing Guidelines Manual § ] 2B1.1(b)(10)(C) [2017] directs the sentencing court to increase the offense level by two levels if 'the offense otherwise involved sophisticated means.'"  *United States v. Wolf*, 860 F.3d 175, 199 (4th Cir. 2017) (quoting USSG § 2B1.1(b)(10)(C)).  "'[S]ophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."  USSG § 2B1.1 cmt. n.9(B).  "The commentary to the Guideline provides examples warranting application of the sophisticated-means enhancement, including

---

[1] She was also sentenced to a (mandatory) 2-year term of imprisonment pursuant to her guilty plea to aggravated identity theft.  She does not challenge this sentence on appeal.

'[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts.'" *Wolf*, 860 F.3d at 199 (quoting USSG § 2B1.1 cmt. n.9(B)). A second example given is "locating the main office of [a telemarketing] scheme in one jurisdiction but locating soliciting operations in another." USSG § 2B1.1 cmt. n.9(B).

"The enhancement applies where the entirety of a scheme constitutes sophisticated means, even if every individual action is not sophisticated." *Adepoju*, 756 F.3d at 257 (citing *United States v. Jinwright*, 683 F.3d 471, 486 (4th Cir. 2012)). "A sentencing court should consider the cumulative impact of the criminal conduct, for the 'total scheme' may be 'sophisticated in the way all the steps were linked together.'" *Jinwright*, 683 F.3d at 486 (citations omitted). "The enhancement requires some means of execution that separates the offenses . . . from the ordinary or generic." *Wolf*, 860 F.3d at 199; *see also Adepoju*, 756 F.3d at 257 (noting "sophistication requires more than the concealment or complexities inherent in fraud," and "[t]hus, fraud per se is inadequate for demonstrating the complexity required for [the] enhancement").

Here, the district court determined the offense involved sophisticated means, because Davis, a paralegal who worked at two different law firms entrusted with the management of various estates, created a multilayered scheme, whereby she stole money and property from the estates. Her crime involved shuffling money between estates handled by the firms and choosing estates where clients were less likely to discover the thefts. To prevent discovery of her scheme, Davis used her knowledge of estates, probate and court procedures to file different accountings in court than those in the law firms'

3

files. In addition, the district court noted that Davis needed to hide her fraud from lawyers and court officials who were sophisticated themselves, which required specialized knowledge. Further, Davis used numerous means to conceal the fraud, including forgery, altering documentation, transferring money between accounts, and omitting property from certain accountings.

We find that the district court did not clearly err in finding the use of sophisticated means. The court noted several ways the offense conduct was more sophisticated than fraud per se; and we conclude that the "total scheme" was also "sophisticated in the way all the steps were linked together." *See United States v. Savage,* 885 F.3d 212, 228-29 (4th Cir. 2018) (finding that sophisticated means were used in bank fraud conspiracy when defendant, among other actions, used insider information to "circumvent the bank's fraud countermeasures"), *cert. filed* (July 8, 2018) (No. 18-5225).

## II.

The Guidelines mandate that "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels." USSG § 3A1.1(b)(1). The commentary to § 3A1.1 defines a "vulnerable victim" as "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." USSG § 3A1.1, cmt. n.2. Application of the enhancement entails a two-part inquiry: (1) a sentencing court must determine that a victim was unusually vulnerable; and (2) the court must then assess whether the defendant knew or should have

4

known of such unusual vulnerability. *United States v. Etoty*, 679 F.3d 292, 294 (4th Cir. 2012).

Here, there is no question that the victim identified by the district court was vulnerable and that Davis knew of his vulnerability. Instead, Davis contends that (1) the victim did not suffer a loss under USSG § 2B1.1 (defining victim for purposes of calculating loss amount); and (2) the victim had a legal guardian to protect his interests, rendering him not vulnerable. However, a victim need not suffer a pecuniary loss to be considered a vulnerable victim for purposes of the Guidelines. *United States v. Salahmand*, 651 F.3d 21, 29 (D.C. Cir. 2011) (holding that, although individuals qualified as victims under § 3A1.1, but not § 2B1.1, there is nothing illogical about the Sentencing Commission providing different definitions for different guidelines); *United States v. Kennedy*, 554 F.3d 415, 423–24 (3d Cir. 2009) (holding that, although elderly account holders from whom defendant stole did not satisfy the definition of "victim" under USSG § 2B1.1(b)(2) because they were reimbursed, they were not precluded from being "vulnerable victims" under USSG § 3A1.1(b)(1) because "victims" under § 2B1.1 and § 3A1.1(b) are separate definitions); *see also United States v. McCall*, 174 F.3d 47, 51-52 (2d Cir. 1998) (holding that, although the bank rather than the account holder is liable for an embezzlement, account holders are nevertheless victims of such an embezzlement, and noting that such an account holder may be a particularly vulnerable victim where there is a substantial chance that he or she will never discover or realize that the account has been depleted).

Moreover, the Guidelines do not define vulnerable victims with reference to whether their interests are otherwise being protected, even though many fitting the "vulnerable victim" definition, such as children and those who are mentally incompetent, would likely have guardians. In addition, we find it illogical to negate the vulnerability of a victim, merely because, as here, he had a guardian who did not adequately protect him. Accordingly, we conclude that the district court's imposition of a two-level enhancement based on its finding that the victim qualified as a vulnerable victim was warranted.

III.

Finally, Davis contends that the district court did not adequately consider and address her claims for a shorter sentence. In evaluating a sentencing court's explanation of a selected sentence, we have consistently held that, although the district court must consider the statutory factors and explain the sentence, "it need not robotically tick through the § 3553(a) factors." *United States v. Helton*, 782 F.3d 148, 153 (4th Cir. 2015) (internal quotation marks omitted). "Regardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record an 'individualized assessment' based on the particular facts of the case before it." *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009) (quoting *Gall*, 552 U.S. at 50). "Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence than that set forth in the advisory Guidelines, a district judge should address the party's arguments and explain why he has rejected those arguments." *United States v. Bollinger,* 798 F.3d 201, 220 (4th Cir. 2015) (internal quotation marks omitted).

6

However, it is sometimes possible to discern a sentencing court's rationale from the context surrounding its decision. *United States v. Montes-Pineda,* 445 F.3d 375, 381 (4th Cir. 2006).

Here, the district court explicitly considered most of Davis's arguments, concluding that her emotional, physical and financial difficulties; her dysfunctional family situation; and her mental health limitations were not unusual when compared to other defendants. Indeed, the court noted that Davis had stable employment and an education that many other defendants lacked. The court also noted that the Guidelines range took into account Davis's abuse of trust, targeting of vulnerable victims, the amount of loss, and that sophisticated means were used. The court also recognized that it was legally unable to consider the consecutive sentence in determining the proper sentence, a conclusion that Davis agrees with on appeal. The court accepted Davis's remorse as genuine, but noted that the crime was serious and ongoing. The court then stated that, despite the significant need to punish and deter, it would impose a sentence at the low end of the Guidelines based upon the mitigating circumstances argued by counsel.

We find that the court's reasoning was individualized, detailed and sufficient.[2] Accordingly, we affirm the district court's judgment. We dispense with oral argument

---

[2] Davis contends that the district court failed to address her drug dependency and the effect her incarceration would have on her son. However, the court's consideration of Davis's family situation and her physical and emotional health sufficiently covered these factors.

because the facts and legal conclusions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*