**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-4673**

_____

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

     v.

JESSE KENDALL GRIFFIN,

        Defendant – Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:20-cr-00340-WO-4)

_____

Submitted:  December 4, 2023                    Decided:  April 8, 2024

_____

Before DIAZ, Chief Judge, QUATTLEBAUM, Circuit Judge, and Roderick C. YOUNG, United States District Judge for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:**  Eugene Ernest Lester III, LESTER LAW, Greensboro, North Carolina, for Appellant.  Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Allaya Lloyd, Appellate Section, Criminal Division, Jeremy R. Sanders, Assistant Chief, Jennifer L. Bilinkas, Fraud Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Sandra J. Hairston, United States Attorney, Nicole R. DuPre, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jesse Kendall Griffin pleaded guilty to a fraud charge arising from his involvement in an enterprise to defraud two federal COVID-19 financial relief programs. The district court sentenced Griffin to a below-Guidelines term of 66 months' imprisonment. Griffin now appeals his sentence, arguing that the district court erred in several respects in calculating his Guidelines range. The district court gave thorough and serious consideration to his objections, and largely for the reasons given by the district court, we affirm.

I.

This case involves a scheme to defraud two federal COVID-19 relief programs aimed at providing loans to small businesses affected by the coronavirus pandemic: the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan ("EIDL") Program. Six people participated in the scheme: James Stote led the enterprise; he and an associate recruited four others—including Defendant Jesse Kendall Griffin—to apply for fraudulent loans.

A panel of this Court has already decided an appeal from two of Griffin's co-recruits and outlined how this scheme operated. *See United States v. Redfern*, No. 22-4196, 2023 WL 2823064, at *1 (4th Cir. Apr. 7, 2023). We thus need not rehash all the particulars, but we note some of Griffin's specifics. As a part of this scheme, Griffin unsuccessfully applied for a PPP loan of $465,902.85 and submitted five EIDL applications. J.A. 55–58. All of Griffin's EIDL applications were ultimately denied, but he did receive a $3,000 advance for one. J.A. 57–58. During the scheme, two of Griffin's co-recruits attempted to transfer money to accounts controlled by Griffin. J.A. 70; J.A. 75–76; J.A. 80; J.A. 101.

3

A federal grand jury charged Griffin and his three co-recruits with conspiracy and fraud charges. J.A. 12–42; J.A. 180. Griffin pleaded guilty pursuant to a written plea agreement to one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. J.A. 43–52; J.A. 180.

The Probation Office prepared a presentence report, *see* J.A. 177–202, to which Griffin and the Government lodged various objections, *see* J.A. 161–62; J.A. 165–67; J.A. 208. The district court resolved these objections over the course of a two-part sentencing hearing and in a written opinion. *See* J.A. 60–144; J.A. 216–39. Ultimately, the district court calculated Griffin's advisory sentencing range under the Sentencing Guidelines as 77 to 96 months. J.A. 117. The court varied downward from the guideline range and sentenced Griffin to 66 months of imprisonment. J.A. 135–36. The court also found Griffin jointly and severally liable for restitution in the amount of the total actual loss, $498,657.37. J.A. 140; J.A. 159–60.

Griffin timely appealed.

## II.

On this appeal, Griffin renews the objections he made below, arguing that the district court erred in multiple respects in calculating his advisory Sentencing Guidelines range. In *Redfern*, a panel of this Court heard—and rejected—the same arguments from two of Griffin's co-recruits. 2023 WL 2823064, at *2–4. In Griffin's case, the district court's thorough explanation of the factual predicate and legal reasoning behind its determinations are nigh-on identical to that it provided—and which this Court affirmed—

4

in *Redfern*. Finding no material distinctions in Griffin's case, we track *Redfern* and affirm the district court.

### A.

First, Griffin argues that the district court erred in calculating the loss amount attributable to him for Guideline purposes. The district court attributed to Griffin the aggregate loss intended by all four co-defendants—including the fraudulent loans sought under both the PPP and EIDL programs—for a total of $2,778,474.85. Under the Guidelines, that led to a 16-level enhancement to Griffin's offense level. *See* U.S.S.G. § 2B1.1(b)(1)(I) (specifying a 16-level increase for losses exceeding $1,500,000). On appeal, Griffin contends that the district court misapplied the "relevant conduct" Guideline, *see* U.S.S.G. § 1B1.3(a)(1)(B), improperly holding him accountable for the intended losses of his co-defendants.[1]

We review only for clear error the district court's calculation of the loss amount, *see United States v. Otuya*, 720 F.3d 183, 191 (4th Cir. 2013), and its application of the relevant-conduct standard to the factual circumstances before it, *see United States v. McVey*, 752 F.3d 606, 610 (4th Cir. 2014).[2]

---

[1] The government agreed below that Griffin should not be held accountable for the intended losses of his co-recruits, *see* J.A. 161–62, but changed its position on appeal. Griffin is incorrect that the doctrine of judicial estoppel bars the government from doing so. That doctrine is inapplicable here. *See King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998) (explaining the doctrine and the three elements required for it to apply).

[2] Like his co-recruits did in *Redfern*, Griffin argues, for the first time on appeal, that the district court was required to make particularized findings as to the scope of the joint (Continued)

We discern no clear error. Griffin's co-recruits raised the same arguments in *Redfern* without avail. The district court's findings as to Griffin's jointly undertaken criminal activity consisted of the exact same evidence relied upon by the district court and deemed sufficient by this Court in *Redfern*. *Compare, e.g.*, J.A. 68–71 (listing as facts supporting its relevant-conduct determination the similar timing of the creation of the co-recruits' corporations, the similar timing of the submissions of their EIDL and PPP loan applications, and the co-recruits' attempts to share profits), *and* J.A. 100–01 (highlighting the similarity in the false bank statements and information used to create both the PPP and EIDL applications), *and* J.A. 111–13 (finding that Griffin authored and submitted his own EIDL applications), *and* J.A. 114 (noting the "striking" similarities between the co-recruits' fraudulent loan applications), *with Redfern*, 2023 WL 2823064, at *2 (finding that the similar timing of the submissions of loan applications and the co-recruits' attempts to share profits supported the district court's relevant-conduct determination).

The *Redfern* panel concluded that "the evidence before the district court amply support[ed] its relevant-conduct determination, establishing by a preponderance of the evidence—at the least—that *the four recruits* were working together in furtherance of their

---

criminal activity to which he agreed. *See United States v. Flores-Alvarado*, 779 F.3d 250, 255–56 (4th Cir. 2015) ("[W]e require sentencing courts to make particularized findings with respect to both the scope of the defendant's agreement and the foreseeability of [the conduct at issue]." (internal quotation marks omitted)); *see also Redfern*, 2023 WL 2823064, at *2 n.1. We review this unpreserved procedural claim for plain error. *See, e.g.*, *Redfern*, 2023 WL 2823064, at *2 n.1. Griffin has not convinced us that the district court's findings with respect to § 1B1.3(a)(1)(B) were insufficient, let alone that any such insufficiency would warrant relief for plain error. *See United States v. Oceanic Illsabe Ltd.*, 889 F.3d 178, 200 (4th Cir. 2018) (applying plain error standard).

joint scheme and that their individual acts were reasonably foreseeable, if not actually known, to each other." *Redfern*, 2023 WL 2823064, at *2 (emphasis added); *see also United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994) (government must establish relevant conduct by preponderance of the evidence).

The district court heard Griffin's arguments as to why his situation might be distinguishable from his co-recruits'. *See* J.A. 81–83, 85; J.A. 217. Griffin argued that he played a lesser role in the scheme, did not stand to benefit as much from the intended fraud, and was not aware of the others' activities. J.A. 104–09. But even accepting these arguments as true, they did not change the district court's analysis. J.A. 110–15. Griffin knew Redfern and was thus "well aware" of Redfern's involvement with the others. Therefore, the others' activity was reasonably foreseeable, and Griffin's conduct furthered the joint scheme. J.A. 114–16.

For the reasons given by the district court and this Court in *Redfern*, we affirm the district court's loss calculation as it applies to Griffin.

B.

Next, Griffin challenges the district court's imposition of the two-level increase in offense level under U.S.S.G. § 2B1.1(b)(10)(C) for offenses that "involved sophisticated means." We review this "essentially factual" determination for clear error. *See United States v. Adepoju*, 756 F.3d 250, 256 (4th Cir. 2014). Again, we find no clear error.[3]

---

[3] To the extent Griffin argues that the district court erred in basing its sophisticated-means determination on his co-recruits' conduct, we disagree. The guidelines require that any adjustments based on "specific offense characteristics . . . shall be determined" by the
(Continued)

7

The *Redfern* panel considered this exact argument and concluded that the district court did not clearly err in determining that this scheme was "unusually complex" "[i]n its totality" and, accordingly, in applying the enhancement. *Redfern*, 2023 WL 2823064, at *3; *see also Adepoju*, 756 F.3d at 257 (citing *United States v. Jinwright*, 683 F.3d 471, 486 (4th Cir. 2012)) ("The enhancement applies where *the entirety* of a scheme constitutes sophisticated means, even if every individual action is not sophisticated." (emphasis added)). The district court in Griffin's case considered the exact same evidence it did in *Redfern* to find this scheme "especially complex" and that the sophisticated-means enhancement applied. *See* J.A. 233–35; *see also* U.S.S.G. § 2B1.1 cmt. n.9(B) (enhancement applies to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense"). *Compare* J.A. 233–35 (considering scheme's reliance on out-of-state recruits, sophisticated understanding of the complicated PPP and EIDL programs, and creation of false bank statements and IRS forms "sufficient to survive minimal scrutiny"), *with Redfern*, 2023 WL 2823064, at *3 (same).

Like the *Redfern* panel, we can discern no clear error in the district court's sophisticated-means determination.

## C.

Lastly, Griffin argues that the district court erred in applying a two-level

---

district court's relevant-conduct determination. *See* U.S.S.G. § 1B1.3(a)(1)(B). The sophisticated-means enhancement is a specific offense characteristic. *See* U.S.S.G. § 2B1.1(b)(10)(C). And we've already concluded that the district court's relevant-conduct determination correctly considered the activity of all co-recruits. So the district court could consider both Griffin's and his co-recruits' use of sophisticated means.

8

enhancement under U.S.S.G. § 2B1.1(b)(12) of the Sentencing Guidelines.[4] The ultimate legal question as to whether this enhancement applies is whether loans under the PPP and EIDL programs were "authorized" or "paid" "in connection with" the President's March 13, 2020, Stafford Act emergency declaration in response to the COVID-19 pandemic. *Redfern*, 2023 WL 2823064, at *3. The district court in Griffin's case, as it did in the cases of his two co-recruits in *Redfern*, concluded that the EIDL benefits (but not the PPP benefits) were authorized "in connection with" a Stafford Act declaration, and accordingly applied the enhancement. *Compare* J.A. 222–30, *with Redfern*, 2023 WL 2823064, at *3.

"[W]e have no reason to doubt the district court's analysis," but "we also have no need to pass on it here." *Redfern*, 2023 WL 2823064, at *4. Assuming *arguendo* that the district court erred in applying § 2B1.1(b)(12), that error is clearly harmless because even if the court had decided the issue the other way, it would have imposed the same sentence, and that sentence would have remained reasonable. *See United States v. Gomez-Jimenez*, 750 F.3d 370, 382 (4th Cir. 2014) ("[R]ather than review the merits of . . . th[is] challenge[], we may proceed directly to an assumed error harmlessness inquiry.").

First, the district court here made it "abundantly clear," *id.*, that even if the § 2B1.1(b)(12) enhancement was *not* properly applied to Griffin, the court still would have imposed the same sentence to appropriately account for "the nature and circumstances of

---

[4] That provision mandates an upward adjustment for offenses that involve "conduct described in 18 U.S.C. § 1040." *See* U.S.S.G. § 2B1.1(b)(12). In turn, § 1040 prohibits fraud "involving any benefit authorized, transported, transmitted, disbursed, or paid in connection with a major disaster declaration . . . or an emergency declaration under . . . the Robert T. Stafford Disaster Relief and Emergency Assistance Act." 18 U.S.C. § 1040(a).

9

the offense and the seriousness of the offense" under 18 U.S.C. § 3553(a), *see* J.A. 230–31; *see also Redfern*, 2023 WL 2823064, at *4 (finding explanation for alternative sentences—matching almost verbatim the one here—to sufficiently establish that the application of the § 2B1.1(b)(12) enhancement, even if in error, "was clearly harmless" under the circumstances).

Second, even if the district court did not apply the enhancement, Griffin's sentence would have remained reasonable. Without the two-level § 2B1.1(b)(12) enhancement, Griffin's advisory Guidelines range would have dropped from 77 to 96 months' imprisonment to 63 to 78 months. Griffin's 66-month sentence would be presumptively reasonable as within this hypothetical Guidelines range. *See United States v. White*, 850 F.3d 667, 674 (4th Cir. 2017) (citing *United States v. Susi*, 674 F.3d 278, 289 (4th Cir. 2012)) ("A within-Guidelines range sentence is presumptively reasonable.").

III.

We affirm the judgment of the district court.

*AFFIRMED*

10