**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-4401**

---

UNITED STATES OF AMERICA,

　　　　　　　Plaintiff - Appellee,

　　　v.

DIAPE SECK,

　　　　　　　Defendant - Appellant.

---

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge.  (8:20-cr-00317-TDC-7)

---

Submitted:  October 30, 2025　　　　　　　　　　Decided:  January 12, 2026

---

Before THACKER, BENJAMIN, and BERNER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ON BRIEF:**  Richard S. Stolker, LAW OFFICES OF RICHARD S. STOLKER, Rockville, Maryland, for Appellant.  Erek L. Barron, United States Attorney, Darren S. Gardner, Assistant United States Attorney, Elizabeth G. Wright, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After an eight-day trial, a federal jury convicted Diape Seck of conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349 (Count 1); three counts of bank fraud and aiding and abetting the same, in violation of 18 U.S.C. §§ 2, 1344 (Counts 2 through 4); four counts of making false entries in bank records, in violation of 18 U.S.C. § 1005 (Counts 5 through 8); and receipt of a bribe or reward by a bank employee, in violation of 18 U.S.C. § 215(a)(2) (Count 9). The district court sentenced Seck to 36 months' imprisonment, followed by a three-year term of supervised release, and ordered him to pay $1,708,446.49 in restitution. On appeal, Seck challenges the sufficiency of the evidence supporting his convictions and the propriety of certain jury instructions. We affirm.

I.

"We review a denial of a motion for acquittal de novo." *United States v. Freitekh*, 114 F.4th 292, 308 (4th Cir. 2024). Nevertheless, "a defendant who challenges the sufficiency of the evidence bears a heavy burden," and we must affirm "[i]f there is substantial evidence to support the verdict, after viewing all of the evidence and the inferences therefrom in the light most favorable to the Government." *Id.* (internal quotation marks omitted). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Henderson*, 107 F.4th 287, 292 (4th Cir.) (internal quotation marks omitted), *cert. denied*, 145 S. Ct. 578 (2024). Thus, "if any trier of fact could have found that the evidence—either direct, circumstantial or a combination of both—along with any reasonable inferences established the essential elements of the crime

2

beyond a reasonable doubt," we must affirm the jury's verdict. *United States v. Rafiekian*, 991 F.3d 529, 547 (4th Cir. 2021) (alteration, emphasis, and internal quotation marks omitted). "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." *Freitekh*, 114 F.4th at 308 (internal quotation marks omitted).

A.

Section 1005 provides that "[w]hoever makes any false entry in any book, report, or statement of [a federally insured] bank . . . with intent to injure or defraud such bank . . . or to deceive any officer of such bank" is guilty of making a false bank entry. 18 U.S.C. § 1005. To establish a violation of this statute, "the government must prove that (1) defendant made a false entry in bank records . . . ; (2) defendant knew the entry was false when it was made; and (3) defendant intended that the entry injure or deceive a bank or public official." *United States v. Gregory*, 54 F.4th 1183, 1208 (10th Cir. 2022) (internal quotation marks omitted). "The statute does not expressly state a materiality requirement," *United States v. Christy*, 916 F.3d 814, 853 (10th Cir. 2019), but the district court here instructed the jury that the false entry had to be material, *see id.* ("A false statement is material when it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." (alteration and internal quotation marks omitted)).

Seck argues that he could not be found guilty of making false entries because he was not aware of the specifics of the Romanian customers' unlawful activities. But Seck did not need to know about the specifics of the unlawful activities to have the requisite

3

intent to injure or deceive the bank. To the contrary, it was enough that he knew that he was opening accounts for nonexistent or unverified customers and placing fraudulent signature cards on the bank's books. And we conclude that the Government presented ample evidence of this knowledge through the testimony of Seck's co-conspirators and physical evidence, including surveillance videos and records of Seck's computer, phone, and personal banking activities.

Seck further contends that he did have the requisite intent because he consistently reported his suspicions about the Romanian customers' activities to management. But the primary concern Seck brought to management was the high volume of accounts opened by Romanian customers. Although he also raised vague concerns about identification documents and addresses the Romanian customers were using to open accounts and sometimes asked his managers to review certain documents, those sporadic reports pale in comparison to the over 400 accounts Seck opened for the Romanian customers during the course of the conspiracy. Notably, Seck never reported to management that he was opening accounts for nonexistent or unverified customers, that he was receiving identification information digitally, or that he was accepting cash in exchange for opening accounts and creating debit cards.

Finally, Seck argues that he could not be convicted under § 1005 because the entries were not false. Specifically, he argues that the mere fact that the Romanian customers used the accounts to perpetuate their fraudulent schemes did not make the entries false. But the Government did not argue that the entries were false because of how the Romanian customers used the accounts. Instead, the Government established that the entries were

4

false because Seck opened accounts for nonexistent or unverified customers. Moreover, the fact that Seck accurately recorded the fabricated identification information provided by the Romanian customers does not mean that the entries were not false.

B.

Section 1344 provides that "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any moneys . . . owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises" is guilty of bank fraud. 18 U.S.C. § 1344. "The major difference between the subsections is that § 1344(1) focuses on how the defendant's conduct affects a bank, while § 1344(2) focuses solely on the conduct." *United States v. Adepoju*, 756 F.3d 250, 255 (4th Cir. 2014). To establish a violation of § 1344(1), the government must prove that "(1) the defendant knowingly executed or attempted a scheme or artifice to defraud a financial institution, (2) he did so with intent to defraud, and (3) the institution was a federally insured or chartered bank." *Id.* "The requirements for a § 1344(2) conviction differ only as to the first element, which is that the defendant knowingly execute a scheme to obtain property held by a financial institution through false or fraudulent pretenses." *Id.*

The district court here instructed that the jury could find that Seck committed the offenses knowingly if he was willfully blind to the Romanian customers' unlawful activities. "The willful blindness doctrine is premised on the idea that defendants should not be permitted to escape the reach of criminal statutes that require proof that a defendant acted knowingly or willfully by deliberately shielding themselves from clear evidence of

5

critical facts that are strongly suggested by the circumstances." *United States v. Oloyede*, 933 F.3d 302, 316 (4th Cir. 2019). The application of this doctrine "has two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* (internal quotation marks omitted).

We conclude that Seck's argument that he had no reason to suspect that the individuals for whom he opened bank accounts were other than the persons they claimed to be is without merit because the evidence established that he was aware that the Romanian customers gathered fake identification information from the internet to open the high volume of accounts. We further conclude that Seck's vague and sporadic reports of his suspicions to management do not negate the intent element for the bank fraud counts for the same reason they do not negate the intent element for the making false entries counts. Finally, contrary to Seck's argument, we conclude that the evidence did not establish that Seck was simply doing his job by opening the accounts. Instead, his furtive actions and the physical evidence show that he knew—or was at least willfully blind to the fact—that the Romanian customers were using the accounts for illegitimate purposes.

C.

"Conspiracy to commit [bank and] wire fraud under 18 U.S.C. § 1349 requires a jury to find that (1) two or more persons agreed to commit [bank and] wire fraud and (2) the defendant willfully joined the conspiracy with the intent to further its unlawful purpose." *United States v. Burfoot*, 899 F.3d 326, 335 (4th Cir. 2018) (wire fraud conspiracy); *see United States v. Vinson*, 852 F.3d 333, 351 (4th Cir. 2017) (bank fraud conspiracy). "[A]

6

jury can infer that a defendant knew about a conspiracy from circumstantial evidence, such as the defendant's relationship with other members of the conspiracy, the length of his association, his attitude, conduct, and the nature of the conspiracy." *United States v. Watkins*, 111 F.4th 300, 309 (4th Cir. 2024) (alteration and internal quotation marks omitted). In fact, "a defendant's knowledge or intent is ordinarily not susceptible to proof by direct evidence. It is generally through reasonable inferences from circumstantial evidence that a jury understands the defendant's mind." *Id.*

We find no merit to Seck's argument that the Government failed to prove that he had knowledge of the Romanian customers' unlawful activities. Again, the evidence established that Seck knew—or was willfully blind to the fact—that the Romanian customers were using the accounts for illegitimate purposes. We also find no merit to Seck's argument that the Government failed to prove that he had anything to gain from his participation in the scheme. To the contrary, Seck's performance numbers improved when he opened the high volume of accounts, and he received a significant influx of cash. And, once again, we reject Seck's attempt to negate the intent element through his vague and sporadic reports of his suspicions to management. Overall, we conclude that Seck's conspiracy conviction is supported by his actions throughout the duration of the scheme and by his co-conspirators' testimony that he explicitly agreed to open the fraudulent accounts in exchange for cash.

7

D.

"Section 215(a)(2) sanctions a financial institution officer who 'corruptly solicits or demands for the benefit of any person, or corruptly accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business or transaction of such institution.'" *United States v. Calk*, 87 F.4th 164, 178 (2d Cir. 2023) (quoting 18 U.S.C. § 215(a)(2)), *cert. denied*, 145 S. Ct. 144 (2024). "[W]hen a statute uses the word corruptly, the government must prove that a defendant acted with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means." *Id.* at 179 (alteration and internal quotation marks omitted).

Relying on *Snyder v. United States*, 603 U.S. 1 (2024), Seck argues that the Government failed to establish that any payment he received from the Romanian customers was a bribe rather than a gratuity. In *Snyder*, the Supreme Court addressed 18 U.S.C. § 666, which "makes it a crime for state and local officials to 'corruptly' solicit, accept, or agree to accept 'anything of value from any person, intending to be influenced or rewarded' for an official act." *Id.* at 5 (quoting 18 U.S.C. § 666(a)(1)(B)). While this statute clearly prohibits such "officials from accepting *bribes* that are promised or given before the official act," the Court asked whether the statute "also makes it a crime for state and local officials to accept *gratuities* . . . that may be given as a token of appreciation after the official act." *Id.* The Court's answer was no. *See id.* at 5, 10-20.

Assuming that *Snyder* extends to § 215(a)(2) such that the statute does not prohibit the acceptance of gratuities, Seck's argument fails because this case is about bribery. Seck

8

contends that he was simply doing his job by opening accounts and creating debit cards for the Romanian customers such that the $200 to $500 payments were tips for services rendered. But Seck was not simply opening accounts and creating debit cards; rather, he was opening accounts and creating debit cards for nonexistent or unverified customers. And creating such fraudulent accounts and debit cards was not Seck's job. Accordingly, the Romanian customers were paying Seck for something he was not permitted to do.

## II.

Seck challenges the propriety of the willful blindness jury instruction. "[W]hile requests for willful blindness instructions should be handled with caution, it is nonetheless appropriate to instruct the jury on willful blindness when the defendant claims lack of guilty knowledge in the face of evidence supporting an inference of deliberate ignorance." *Oloyede*, 933 F.3d at 316 (internal quotation marks omitted). "We review a court's decision to offer a willful blindness instruction for abuse of discretion." *Vinson*, 852 F.3d at 357.

We conclude that there was ample evidence that Seck, at a minimum, turned a blind eye to the Romanian customers' unlawful use of the accounts he opened for them. Accordingly, the district court did not abuse its discretion in offering the willful blindness instruction.

Finally, Seck argues that the district court incorrectly instructed the jury about the elements of making false entries. After reviewing the instructions, we conclude that the court accurately advised the jury about the materiality and intent elements. We further note that the district court allowed counsel to clear up any confusion in his closing argument.

9

III.

In summary, we conclude that the evidence presented at trial was sufficient to convict Seck of all nine counts, that the district court did not abuse its discretion in offering a willful blindness instruction, and that the district court accurately instructed the jury on the elements of making false entries. Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

10